

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-17-00346-CV

CITY OF FOREST HILL, TEXAS,                                         APPELLANTS
AND BRIGETTE MATHIS

V.

MICHIELLE BENSON, IN HER                                              APPELLEE
OFFICIAL CAPACITY AND
INDIVIDUALLY

----------

FROM THE 153RD DISTRICT COURT OF TARRANT COUNTY
TRIAL COURT NO. 153-290222-17

----------

## DISSENTING OPINION

----------

In deciding which of two incompatible elected offices Michielle Benson properly holds, the majority relies on an election code provision that I believe does not apply, and so I respectfully dissent.

On the same day in February 2016, the city secretary received from Benson signed ballot applications for two elected positions within the City of

Forest Hill: city-council member and library-board trustee. The City processed her applications that day and in that sequence, and her name appeared on the May 7, 2016 ballot for each position. She won both races and on May 17 took oaths of office for both positions in the same sequence—that is, she was first sworn in as a city-council member and then as a library-board trustee.

To decide which position Benson actually held, the majority relies on section 141.033 of the Texas Election Code and concludes that the chronological order in which Benson submitted her applications controls over that in which she took her oaths of office and that she is thus rightly a city-council member. But to me, applying section 141.033 makes little sense in this situation; more logical is to use the common-law principles of incompatibility and effective resignation from which election code section 201.025 was derived. That was how the Texas Attorney General looked at it when—after Benson had been sworn in and had ascended to both offices—he was asked to opine on whether she could simultaneously sit on the city council and the library board and, if not, which position she could properly hold. Under the A.G.'s analysis, that position was library-board trustee. Tex. Att'y Gen. Op. No. KP-0125 (2017).

### Why section 141.033 doesn't work here.

Section 141.033 is designed to prevent a candidate from applying for more than one place on a single ballot if the multiple offices the candidate wishes to seek "are not permitted *by law* to be held by the same person." Tex. Elec. Code Ann. § 141.033(a)(1) (West 2010) (emphasis added). Although the code does not

2

explain what "not permitted by law" means, I take the phrase in its commonplace sense: that some statute, constitutional provision, rule, ordinance, or regulation precludes someone from holding two given offices.[1] A basic example of this can be found in the Texas Constitution, which has an entire section within article 16 that is titled "Holding more than one office; exceptions; right to vote." *See* Tex. Const. art. XVI, § 40. There, we see that the "law"—in the form of the constitution—provides that "[n]o person shall hold or exercise at the same time, more than one civil office of emolument,"[2] with certain exceptions following. *Id.*

As the City's request—sent through the Tarrant County District Attorney's office—for an Attorney General opinion correctly stated, neither the council nor the board position is "one of emolument," and the city charter does not expressly

---

[1]For a discourse on the difference between *the law* and *a law*, and how the former is generally used to refer to the body of jurisprudence that interprets but does not make "law," *see Law*, Garner's Dictionary of Legal Usage (3d ed. 2011). Because neither party argues that some binding judicial precedent resolved the "which-office" conundrum, it is not necessary to parse and prioritize the various sources of law generally; suffice it to say that not even the trial court's holding would constitute "law" as the word is used in section 141.033(a)(1), because trial-court decisions "have no precedential effect." *In re McReynolds*, 502 S.W.3d 884, 888 (Tex. App.—Dallas 2016, no pet.) (citing *In re Expunction*, 465 S.W.3d 283, 288 (Tex. App.—Houston [1st Dist.] 2015, no pet.)). In fact, the majority opinion here is not "law" either; it is a statutory interpretation that, if not overruled by the supreme court, binds only later suits involving the same subject matter within our jurisdictional territory. *See Brazos Elec. Power Coop., Inc. v. Tex. Comm'n on Envtl. Quality*, 538 S.W.3d 666, 688, n.15 (Tex. App.—El Paso 2017, pet. pending); *Messina v. State*, 904 S.W.2d 178, 181 (Tex. App.—Dallas 1995, no writ).

[2]An emolument is "[a]ny advantage, profit, or gain received as a result of one's employment or one's holding of office." *Emolument*, Black's Law Dictionary (10th ed. 2014).

prohibit holding a council position and a board position simultaneously. Indeed, the very fact that the City sought an opinion about whether Benson's two offices conflicted under the common-law doctrine of incompatibility shows that no "law" prohibited her from holding them both when she presented her ballot applications in February 2016. The request's summary makes this clear:

> It seems *possible* in the current situation that the duties of the two offices *could* address overlapping issues. For example: water and sanitary sewer service to the library; acquisition of land for the library; regulation by the city of land owned by the library; and, as previously stated, contracting for election services. Are the two positions incompatible? [Emphases added.]

And even months later, after the May 2016 election and Benson's swearing(s)-in, when the A.G. opined that the incompatibility doctrine precluded Benson's dual office-holding, still there was no "law" to that effect: A.G. opinions, though persuasive, are not controlling authority and are therefore not "law." *Comm'rs Court of Titus Cty. v. Agan*, 940 S.W.2d 77, 82 (Tex. 1997); *Skypark Aviation, LLC v. Lind*, 523 S.W.3d 869, 874 (Tex. App.—Eastland 2017, no pet.); *City of Houston v. S. Pac. Transp. Co.*, 504 S.W.2d 554, 557 (Tex. Civ. App.— Houston [14th Dist.] 1973, writ ref'd n.r.e.) (describing the principle that A.G. opinions "do not have the force of law" as "settled").

Moreover, the trial court's own judgment expressly recognizes that "no one knew that [Benson] could not hold both offices when she filed; therefore[,] no one knew that they could challenge her right to appear on the ballot for both offices." That is, the trial court tacitly (or really not so tacitly) admitted that no

4

constitutional provision, statute, rule, etc. existed in February 2016 by which Benson, her opponents, the City of Forest Hill, or the city secretary who processed Benson's two ballot applications could or should have known that the two offices "are not permitted by law to be held by the same person." Tex. Elec. Code Ann. § 141.033(a)(1).

Thus, in February 2016 Benson could not have filed "more than one application for a place on a ballot *in violation of this section,*" and so, as a further consequence of the statute's plain meaning, the balance of that sentence—"each application filed subsequent to the first one filed is invalid"—cannot possibly apply. *Id.* § 141.033(b) (emphasis added).

The election code incorporates the Code Construction Act (chapter 311, Texas Government Code). *See id.* § 1.003(a) (West 2017). That makes our primary task one of giving effect to the legislature's intent. Tex. Gov't Code Ann. § 311.021 (West 2013); *Galbraith Eng'g Consultants, Inc. v. Pochucha*, 290 S.W.3d 863, 867 (Tex. 2009). And unless a different meaning is apparent from the context, or unless the plain meaning leads to absurd or nonsensical results, the plain meaning of a statute's text is the best expression of legislative intent. *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625–26 (Tex. 2008). Indeed, "when interpreting a statute, '[t]he text is the alpha and the omega of the interpretive process.'" *Bosque Disposal Sys., LLC v. Parker Cty. Appraisal Dist.*, No. 17-0146, 2018 WL 2372810, at *2 (Tex. May 25, 2018) (quoting *BankDirect Capital Fin., LLC v. Plasma Fab, LLC*, 519 S.W.3d 76, 86 (Tex. 2017)). The Texas

5

Supreme Court put it nicely in *BankDirect Capital*: "If a case can be decided according to the statute itself, it must be decided according to the statute itself. This is a bedrock principle." 519 S.W.3d at 78.

It is only by erroneously applying section 141.033(b) that the majority can hold that Benson's second-filed library-board application was "invalid" the moment it was filed and that she was therefore a candidate only for city council when the May 2016 election occurred. Accordingly, I must respectfully conclude that the majority's holding is incorrect.[3] To me, the error is functionally the same

---

[3]I recognize that the City did not argue the inapplicability of section 141.033 on this basis, but we are tasked with reviewing both statutory-construction issues and the trial court's conclusions of law de novo. *See Crosstex Energy Servs., L.P. v. Pro Plus, Inc.*, 430 S.W.3d 384, 389 (Tex. 2014) (addressing statutory construction); *Trinity Drywall Sys., LLC v. Toka Gen. Contractors, Ltd.*, 416 S.W.3d 201, 207 (Tex. App.—El Paso 2013, pet. denied) (addressing conclusions of law). The City instead focused its argument on the deadline for challenging ballot applications that is found in section 141.034 and contended that the trial court essentially allowed a post-election challenge to a ballot application when section 141.034's time limits made such a challenge moot. That section is obviously designed to ensure a degree of certainty that ballots are accurate and do not have candidates erroneously appearing on or left off them. The few cases on this subject recognize that a challenge to someone's candidacy on a ballot (on a ground other than ineligibility, which is a different issue altogether, *compare* Tex. Elec. Code Ann. § 141.001 (West 2017), *with id.* § 141.034(b)) becomes moot once absentee voting has begun. *See, e.g., In re Crenshaw*, No. 05-17-00330-CV, 2017 WL 1292013, at *1 (Tex. App.—Dallas Apr. 7, 2017, orig. proceeding) (mem. op.); *Law v. Johnson*, 826 S.W.2d 794, 796–97 (Tex. App.—Houston [14th Dist.] 1992, no writ). I certainly agree with the City that it is "illogical that the legislature would provide a deadline to challenge an application, as seen in section 141.034, but then allow an elected official to claim an application was invalid months after the election occurred"; but I am not persuaded that section 141.034 comes into play on these facts. In that much I agree with the majority's statement that "Section 141.034 has no application here." That still leaves unfilled the analytical hole explaining why section *141.033* applies.

6

as in the trial court's judgment, when that court wrote that the "Attorney General's opinion related back to the time of filing the ballot place applications, not just to the Oaths of Office." But according to the statutory text, that can be true only if the A.G. opinion is viewed as "law" under section 141.033(a)(1). It is not.

The trial court's conclusions of law incorporate this misreading in setting out that Benson filed her city-council application first; that she was not permitted by law to hold both offices; that city council was the only office for which she was properly elected and took an oath to serve; that her application for the library-board position was "invalid, and she was never properly elected to the Library Board"; that she never properly applied for a place on the ballot for the library board and so "never has properly held" that position; and that therefore, "[i]ncompatibility of office does not exist."

All of this is in service to the trial court's legal conclusion that "[s]ection 141.033 must be considered before the issue of the post-election oath of office should be considered." But given that chapter 141 of the election code is titled "Candidacy for Public Office Generally" and falls within Title 9 ("Candidates") of the election code, it strikes me as unworkable to construe the code in a way that ignores the fact that an actual election has occurred in the meantime.

**Why the doctrine of incompatibility and implied resignation work better.**

The parties have moved far beyond the "candidacy" phase covered by chapter 141. As of May 17, 2016, after winning both elections ten days earlier, Benson qualified for and became an "officer" by taking the oaths of office for both

7

the city council and the library board. *See generally State ex rel. Glenn v. Jordan*, 28 S.W.2d 921, 923 (Tex. Civ. App.—Amarillo 1930, writ dism'd w.o.j.) (discussing qualifying for office by taking required oath and posting any required bond); *Buchanan v. Graham*, 81 S.W. 1237, 1239 (Tex. Civ. App.—Fort Worth 1904, no writ) (recognizing that an officer qualifies by taking the necessary oath of office); *see also* Tex. Att'y Gen. Op. No. LO-97-047 (1997) (concluding that because, under the Texas Constitution, a board member who resigns continues to hold office until his successor has qualified, he may not be appointed as chancellor until the governor has appointed his successor and that person has taken the oath of office). Although not using the word "qualify," the City's home-rule charter provides that "[e]very officer of the City shall, before entering upon the duties of his office, take and subscribe to the oath of office as prescribed by the Constitution of the State of Texas." Forest Hill, Tex., Code of Ordinances, art. X, § 10.06 (2013).

It seems beyond question that upon taking the first oath, for city council, Benson was then an "officer" within the meaning of section 201.025 of the election code and, more generally, under the common-law incompatibility doctrine at the time she took the second oath, for library board. As the A.G. concluded, the result was that she impliedly resigned from the city council.[4] *See*

---

[4]The A.G. opinion does not mention section 201.025, which provides that "[i]f an officer accepts another office and the two offices may not lawfully be held simultaneously, a vacancy in the first office occurs on the date the person qualifies for the other office." Tex. Elec. Code Ann. § 201.025 (West 2010). But

Tex. Att'y Gen. Op. KP-0125 (2017). The majority believes that applying section 201.025 or the common law from which it was derived would lead to absurd results because Benson took both oaths on the same day, saying that "it cannot be presumed that Benson intended to resign her city-council position on the very same day that she took the oath of office for that position." The same could be said, of course, if Benson had qualified for the library-board position the next day, or the next week, or the next month, for we can safely say from the parties' pleadings and positions that Benson *never* intended to resign from the city council; it was clearly the position she preferred to hold once the A.G. opined that she could not hold both.

Neither the statute nor the common law suggests that one must have been in office for some minimum time period before the effective-resignation principle comes into play. We know from at least one case that 24 hours was long enough for someone to have been an officer before qualifying for another office the next day and thus effectively resigning from the previous day's office. *State ex rel. Kingsbury v. Brinkerhoff*, 66 Tex. 45, 46, 17 S.W. 109, 110 (1886) (holding that

the pre-code caselaw cited by the A.G. is to the same effect. *Pruitt v. Glen Rose Indep. Sch. Dist. No. 1*, 126 Tex. 45, 49, 84 S.W.2d 1004, 1006 (1935); *Thomas v. Abernathy Cty. Line Indep. Sch. Dist.*, 290 S.W. 152, 152 (Tex. Comm'n App. 1927, judgm't adopted). In any event, the letter through which the City asked for the A.G.'s opinion did not mention any election-code sections but did cite those two cases. At the temporary-injunction hearing, the city attorney agreed that "neither one nor the other of the election statutes were what [he] had in mind at that time," explaining that the "question that was being addressed was one of the doctrine of conflicting loyalties with regard to dual office holding. And that was the issue."

9

city secretary had effectively resigned that office by taking the oath for the office of recorder the day after qualifying as city secretary). I think it would be more absurd to read into the statute (or into the common-law principle) a requirement that one must have been an officeholder for at least a day, or half a day, or more than 83.7 minutes, before triggering its application when there seems no logical or textual reason to do so.

We live in a linear world where events necessarily occur sequentially. The legislature, and the supreme court before it, have decided that taking the oath for an incompatible office works a resignation from the first-held office without requiring that a given time elapse between the two events, and I would abide by that principle even when the second oath comes right on the heels of the first.

For these reasons, I would reverse the judgment below and remand the attorney's-fee issue to the trial court; because the majority has affirmed the judgment, I respectfully dissent.

/s/ Elizabeth Kerr
ELIZABETH KERR
JUSTICE

DELIVERED: July 12, 2018